**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

**22ND CENTURY TECHNOLOGIES, INC.,**

        Plaintiff,

        v.

**ILABS, INC.,**

        Defendant.

</td><td>

Civil Action No. 22-00717 (ZNQ) (LHG)

**OPINION**

</td></tr>
</table>

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion for Temporary Restraining Order filed by Plaintiff 22nd Century Technologies, Inc. ("Plaintiff"). (the "Motion," ECF No. 1). Plaintiff filed a Memorandum of Law in support of the Motion. ("Plaintiff's Memorandum," ECF No. 1-1.) Defendant iLabs, Inc. ("Defendant") opposed the Motion, (Opposition Brief, ECF No. 8), to which Plaintiff replied by way of a letter brief, (Reply, ECF No. 13). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will grant the Motion.

## I.  BACKGROUND AND PROCEDURAL HISTORY

On February 2, 2022, and on February 8, 2022, Plaintiff filed its complaint and a Motion for a Temporary Restraining Order and Preliminary Injunction, respectively, in Superior Court of New Jersey, Chancery Division, Somerset County. (ECF No. 1.) The claims in the Complaint stem from a contractual dispute between the parties. (Complaint ¶ 1, ECF No. 1.) The parties'

relationship arose because they worked together to provide services to a third party, AttainX, a company that "designs, creates, and provides information technology solutions and consulting services for businesses and government agencies throughout the United States."  (*Id.* ¶ 3.) Specifically, both parties worked for AttainX "in connection with [obtaining] several Prime Contracts" from the United States Department of Agriculture ("USDA").  (*Id.* ¶ 4.)  While Plaintiff worked as a subcontractor for AttainX on these Prime Contracts, Defendant worked as a "second-tier subcontractor," meaning Defendants worked under Plaintiff's supervision.  (*Id.* ¶¶ 6–7.)

On or about May 11, 2016, the two parties entered into a Master Contractor Agreement ("Master Contract") in which Defendant agreed to provide information technology services to Plaintiff.  (*Id.* ¶¶ 8, 11.)  In conjunction with the Master Contract, Defendant was "given access to trade secrets [and] confidential and proprietary methods and information."  ((*Id.* ¶ 9.)  It is alleged that Madhan Subramanian, an employee of Defendant and one who was instrumental in obtaining the Prime Contracts, specifically "had access to [these] highly sensitive data and information." ((*Id.* ¶ 10.)  Plaintiff alleges Defendant breached several provisions within this Master Contract, including: Paragraph 4 that prohibits the disclosure of confidential information to any third party during the agreement and for a period of one year afterward, Paragraph 5 that prohibits the solicitation of Plaintiff's clients for business, and Paragraph 7 that mandates that the Master Contract is exclusive between the parties and prohibits Defendant from providing similar services to other parties. ((*Id.* ¶¶ 12–14.)

The Complaint spans six counts and alleges the following: (1) Breach of Contract for Disclosure of Confidential Information (Count I) (*Id.* ¶¶ 47–51); (2) Breach of Contract for Solicitation of Plaintiff's Clients (Count II) (*Id.* ¶¶ 52–56); (3) Breach of Contract for Providing Similar Services (Count III) (*Id.* ¶¶ 57–61); (4) Violation of the Consumer Fraud Act (Count IV)

(*Id.* ¶¶ 62–67); (5) Unlawful Interference with Prospective Economic Advantage (Count V) (*Id.* ¶¶ 68–73) and; (6) Unjust Enrichment (Count VI) ((*Id.* ¶¶ 74–79.)

On February 10, 2022, Defendants removed the matter from Superior Court of New Jersey, Chancery Division, Somerset County to the Court. (Notice of Removal, ECF No. 1.) On February 14, 2022, the Court conducted a telephonic case management conference, and entered an order setting a briefing schedule for the Motion. (ECF No. 5.) Following the filing of Defendant's opposition, Plaintiff's counsel requested leave to file a reply by February 21, 2022. (ECF No. 9.) The Court granted Plaintiff's request; Plaintiff timely filed its reply. (ECF No. 11.) The Court now considers the Motion.

## II.   **PARTIES' ARGUMENTS**

### A.   **Plaintiff's Position**

Plaintiff begins by asserting that it is likely to succeed on the merits. (Plaintiff's Memorandum at 13.) According to Plaintiff, there was a breach of contract claim in violation of the non-solicitation provision because Defendant has directly solicited Plaintiff's government client. (*Id.* at 16.) Plaintiff contends that the solicitation "has . . . caused [its] government client to engage [with Defendant's] new business partner, CSC." (*Id.*) More broadly, Plaintiff contends that it can "readily establish the elements of its breach of contract claims" against Defendant. (*Id.*) In doing so, Plaintiff argues it is undisputed there was a contract between the parties. (*Id.*) Plaintiff further contends that Defendant "expressly acknowledged and agreed that it would maintain . . . [confidentiality]" during and for a year after the Master Contract. (*Id.*) Plaintiff also argues that Defendant "agreed not to solicit [its] customers . . . while working with them for a period of one year from the date" the Master Contract ended. (*Id.*) These provisions, Plaintiff argues, were breached because "[on] or about September 2021, [Defendant] began working with CSC, a direct

competitor to [Defendant] and its business partner, AttainX, to perform the same work as done for the USDA Technical Projects under a different contract vehicle." (*Id.* at 17.)  In fact, Plaintiff argues that Defendant and its competitor, CSC, "teamed up, pursued another bridge contract, and were awarded a one-year bridge contract and a possible six-month extension." (*Id.*)  Plaintiff similarly contends that Defendant breached the Master Contract because it participated in the process of obtaining the bridge contract from the government and used Plaintiff's confidential information to support its competitor's efforts. (*Id.*)

Also, on the likelihood of success on the merits, Plaintiff argues the provisions of the Master Contract are enforceable as a reasonably restrictive covenant under New Jersey law. (*Id.*)  Plaintiff contends that there is a legitimate interest in seeking to protect its relationship with its government clients, which represents its significant time, effort, and money invested, and is worthy of protection. (*Id.*)  Plaintiff also argues that the non-solicitation, exclusivity, and confidentiality provisions, are all "narrowly tailored to protect those legitimate interests." (*Id.* at 18.)  Plaintiff contends that the Master Contract is "reasonable in duration and scope" because "the one year [non-solicitation] provision" has been previously held to be reasonable and enforceable and "does not unduly restrict [Defendant's] work." (*Id.*)  Plaintiff argues that Defendant's direct hiring of its employees is evidence of Defendant's breach. (*Id.* at 18–19.)

With respect to irreparable harm, Plaintiff argues it has lost its government client and its "confidential and proprietary information" is presently being shared with its competitor to perform the same work. (*Id.* at 19–20.)  Plaintiff contends that though the extent of the injury cannot be quantified, it remains that Defendant's repeated use of confidential information will cause it to continue to lose its clients and goodwill. (*Id.* at 20.)  Further, Plaintiff argues that Defendant's

continued use of its trade secrets "presents a grave and immediate threat to [its] viability . . . as an organization." (*Id.*)

As to balancing of hardships, Plaintiff contends this factor favors granting its injunctive relief because if Defendant were allowed to continue in its present course of conduct, Defendant will continue to "wrongfully possess and use [Plaintiff's] confidential and proprietary information to solicit" Plaintiff's clients, "hold a competitive advantage over [Plaintiff]," and Plaintiff "will continue to lose business and suffer" reputational damage. (*Id.*) On the contrary, Plaintiff contends Defendant will suffer no harm because the Court's injunction would only enforce the Master Contract that was agreed upon. (*Id.* at 21.) Regarding the public interest, Plaintiff argues that enjoining Defendant's conduct would deter this of type unlawful and unethical conduct. (*Id.*)

B. **Defendant's Position**

As expected, Defendant argues Plaintiff's claims are not likely to succeed on the merits. (Opposition Brief at 9.) It argues that there are numerous factual disputes, with respect to Plaintiff's appropriation and use of confidential information claims, that preclude injunctive relief. (*Id.*) Defendant points out the several defects, barring success on the merits, in Plaintiff's complaint. (*Id.* at 10.) First, Defendant argues Plaintiff fails to identify the specific confidential or trade secret information that was appropriated. (*Id.*) Second, Defendant contends that Plaintiff also fails to "allege that [it] has solicited any client of the [Plaintiff's]." (*Id.*) Third, Defendant argues "the exclusivity provision cannot reasonably be read to preclude iLabs from providing services to companies other than [Plaintiff]." (*Id.*) Fourth, Defendant urges Plaintiff's consumer fraud act claim "fails for the same reasons." (*Id.*)

Specifically, on the disclosure claim, Defendant posits that Plaintiff's alleged claim for disclosure of confidential or trade secret information is lacking because the information Plaintiff

5

alleges was disclosed is "publicly available" and "known by all USDA information technology contractors." (*Id.* at 10–11.)  Defendant contends that Plaintiff's allegation here lacks factual support.  (*Id.* at 12.)  Regarding the solicitation claim, Defendant argues this restrictive covenant has no legitimate purpose because there is not sufficient factual support that USDA was a client and Plaintiff "has not been in privity of contract with USDA since August 2018." (*Id.* at 13.)  In addition, Defendant argues that Plaintiff has not shown that it "even sought out the subject work" which Defendant was ultimately awarded.  (*Id.*)  Pertaining to the exclusivity claim, Defendant contends this provision is inapplicable to them because it is "plainly overbroad and unenforceable." (*Id.* at 14.)  Defendant seemingly argues that the provision is overbroad because it seeks to prohibit Defendant from working with any party even on "***other work***, never awarded to [Plaintiff] (or AttainX.)" (*Id.*)  In essence, Defendant argues that Plaintiff is seeking to prohibit it from performing work Plaintiff never sought nor received.  (*Id.* at 15.)  Defendant contends if this provision were enforced, then all subsequent software work it would perform for other clients would require Plaintiff's approval.  (*Id.*)   Last, Defendant argues Plaintiff's consumer fraud act claim will also likely not succeed on the merits because it also lacks factual support and specificity of allegations.  (*Id.* at 15–16.)

With respect to irreparable harm, Defendant contends Plaintiff has none.  (*Id.* at 17.)  It argues that because money damages are available to Plaintiff, it cannot show it suffered irreparable harm.  (*Id.*)  Defendant elaborates there is no irreparable harm because "the value of the work i.e. both monies paid by the government and prime contractor as well as profit margin earned can be calculated with scientific exactitude." (*Id.* at 18.)  Further, Defendant argues that Plaintiff cannot establish that it suffered irreparable harm because there was a six-month delay which caused Plaintiff to suffer self-inflicted harm.  (*Id.* at 18–20.)

Defendant asserts that the balance of harms is also in its favor.  (*Id.* at 21.)  Defendant relays its employees and partners will far suffer greater harm because its employees could lose their jobs, its relationship with USDA could be disrupted, and its relationship with CSC could be affected—wherein Plaintiff will not be similarly harmed.  (*Id.* at 22.)

Relating to the public interest prong, Defendant argues it does not weigh in favor of granting injunctive relief because it will disrupt its ability to perform work for its government client and CSC, "despite the fact that CSC has no privity of contract" and would be incidentally harmed.  (*Id.* at 24.)  Defendant concludes that "such an injury to a federal government customer and market competitor that is subject to no restrictions is not in the public interest."

C.  **Plaintiff's Reply**

Plaintiff begins its reply by bringing to the Court's attention, Defendant's and CSC's inappropriate communications to AttainX, Plaintiff's business partner, sometime around the filing of its Motion.  (Reply at 3.)  The first communications involved a text message and a call to a Senior Data Architect for AttainX from Madhan Subramanian requesting a time for a call and another text where Madhan refers to himself as an official from the USDA.  (*Id.*)  Plaintiff seemingly argues Defendant was misrepresenting himself since he was only a subcontractor on the USDA project and not an official of USDA.  (*Id.*)  The second communications involved a text from a CSC employee, who previously worked for Plaintiff, to AttainX's employees seeking information about the module Plaintiff's developed in obtaining the USDA contract.  (*Id.* at 4.) Plaintiff highlights that this alerted AttainX's employees, and it was accordingly informed of Defendant's inappropriate communications.  (*Id.* at 4–5.)  It argues that these communications are evidence of Defendant's "ongoing" and "knowing" breaches in efforts to solicit information and clients.  (*Id.* at 5.)

Next, Plaintiff rejects Defendant's assertions that the information it had access to was not confidential and that it was publicly available.  (*Id.* at 6.)  Plaintiff argues that its Complaint set forth the various proprietary and confidential information Defendant had access to including "Project Confluence Pages, Recurring Meetings, Ad Hoc Meetings, Quantitative Data, and Qualitative Data."  (*Id.*)  Plaintiff also contends Defendant was "exposed to processes, methodologies, templates, discussions, issues, risks and remediations."  (*Id.*)  In addition, Plaintiff argues that Defendant "only received access to these materials through association with [them] and AttainX."  (*Id.* at 7.)  Plaintiff argues that along with the information being confidential, "CSC is also using this information to actively compete against . . . and foreclose [them] from further work with the USDA."  (*Id.*)

In length, Plaintiff highlights and contests several alleged false statements present in Defendant's opposition.  (*Id.*)  First, Plaintiff argues that Defendant's statement that it did not have the appropriate contract vehicle that would enable it to obtain work from the USDA "seems to miss [Plaintiff's] point entirely" because the fact that it does not hold or possess the contract vehicle is evidence of the "kind of damage that [Plaintiff] suffered as a result of [Defendant's] work with CSC."  (*Id.* at 8.)  Second, contrary to Defendant's assertion that it does not have a current business relationship with the USDA, Plaintiff argues "there are two contracts which [it] is performing under for the benefit of the USDA."  (*Id.* at 10.)  Third, Plaintiff responds that Defendant's claim that USDA is not a client is errant and is a "veiled attempt to distract the Court from [iLabs'] sanctionable conduct."  (*Id.* at 11.)  Further, Plaintiff refutes Defendant's assertion that it did not solicit AttainX as a client because, according to Plaintiff, Defendant and AttainX had a prior business relationship and Defendant has expressed interest in participating in an upcoming business solicitation that involved AttainX.  (*Id.*)  Fourth, Plaintiff argues that

Defendant's statement that it entered a teaming agreement and submitted a successful bid proposal while working with CSC amounts to a party admission because Defendant is "admitting it teamed up with . . . CSC to pursue the same type of work it was previously performing." (*Id.* at 11–12.)

Fifth, Plaintiff rejects Defendant's claim that the new work it now does is on a different contract vehicle. (*Id.* at 12.) Here, Plaintiff contends again that the absence of the contract vehicle is evidence of damages it suffered from Defendant's breach and its lack of the contract vehicle is temporary until it pursues a new one. (*Id.*) Sixth, Plaintiff argues that Defendant is performing the same exact work with CSC, contrary to its assertion, because the same team that worked for Plaintiff is currently working for CSC, and Defendant's outreach to clarify parts of the prior project is evidence of this. (*Id.* at 12–13.) Seventh, Plaintiff contends it is likely to suffer harm and is entitled to injunctive relief because the Master Contract expressly provides for this type of remedy. (*Id.* at 13.) Eighth, Plaintiff argues any delay should not foreclose an irreparable harm finding because "the timing of the filing of this matter was deliberate" and it was "attempting to avoid issues for its government client" which could emerge from litigation. (*Id.* at 14.)

Ninth, Plaintiff rejects that its exclusivity provision is overbroad and unenforceable because the terms of the Master Contract survive the termination of the work and New Jersey Courts favor the enforcement of restrictive covenants. (*Id.* at 15.) Plaintiff concludes here that the non-solicitation, exclusivity, and confidentiality provisions are all "narrowly tailored to protect [its] legitimate business interest and are enforceable" under the applicable standard. (*Id.* at 16.)

III.   **LEGAL STANDARD**

Rule 65 governs temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65; *Vuitton v. White*, 945 F.2d 569, 573 (3d Cir. 1991). A restraining order loses its temporary status and becomes a preliminary injunction if it continues beyond a ten-day limit. *Id.* (citing *Sims*

*v. Greene*, 160 F.2d 512, 517 (3d Cir. 1947)).   Courts "will look beyond terminology to the actual content, purport, and effect of that which may otherwise described as a temporary restraining order or as a preliminary injunction." *In re Arthur Treacher's Franchise Litig.*, 689 F.2d 1150, 1155 n.7 (3d Cir. 1982).

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merk Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).   As the Court emphasizes, "there is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction." *FM 103.1, Inc. v. Universal Broad.*, 929 F. Supp. 187, 193 (D.N.J. 1996) (citing *E.B. v. Poritz*, 914 F. Supp. 85, 90 (D.N.J. 1996)).   A Court should only issue an injunction "if the plaintiff produces evidence sufficient to convince the district court that *all four factors* favor preliminary relief."   *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994) (emphasis added).   Further, it is within "the sound discretion of the district judge" to balance all of these factors "in making a decision." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982).

A party seeking a preliminary injunction must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief.   *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004).   Of the four requirements, this Circuit has placed significant weight "on the probability of irreparable harm and the likelihood of success on the merits" factors. *FM 103.1, Inc.*, 929 F. Supp. at 193.   "If the moving party makes this threshold

showing, the court balances these factors, along with the relative hardship that the grant or denial of an injunction would inflict on the parties and the public interest." *ADP, LLC v. Rafferty*, 923 F.3d 113, 120 (3d Cir. 2019). Finally, injunctive relief is an available and appropriate remedy to enforce a restrictive covenant. *Esquire Deposition Servs., LLC v. Boutot*, Civ. No. 09-1526, 2009 WL 1812411, at *5 (D.N.J. June 22, 2009). *See e.g.*, *Arch Pers. Care. Prods., L.P. v. Malmstrom*, 90 F. App'x 17 (3d Cir.2003) (affirming district court's grant of injunctive relief to enforce a non-compete agreement).

## IV.   <u>ANALYSIS</u>

After a review of the parties' submissions and the relevant law, the Court is convinced that Plaintiff has met its burden and is entitled to injunctive relief.[1]

### A.   <u>Likelihood of Success on the Merits</u>

The Court will first address the breach of contract claims, alleged in Counts I through III, and then briefly address the consumer fraud act, unlawful interference with prospective economic advantage, and unjust enrichment claims.

"To state a claim for breach of contract, [a party] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). *See EnviroFinance Grp., LLC v. Env't Barrier Co., LLC*, 440 N.J. Super. 325, 345 (App. Div. 2015) ("To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract,

---

[1] The Court notes that Plaintiff's original motion sought an emergent temporary restraining order. Time has passed since its initial filing in state court because Defendant elected to remove the case to federal court. Accordingly, the Court views the Motion as one seeking a preliminary injunction rather than a temporary restraining order. The analysis does not differ.

and the breach caused the claimant to sustained damages." (citing *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007))).

When interpreting contractual provisions, "fundamental canons of contract construction require that a court examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances." *Highland Lakes Country Club & Cmty. Ass'n v. Franzino*, 186 N.J. 99, 116 (N.J. 2006). A court generally considers the contractual terms, the surrounding circumstances, and the purpose of the contract. *Id.* Under the basic rules of contract construction, a document must be read as a whole "in accord with justice and common sense." *Krosnowski v. Krosnowski & Garford Trucking*, 22 N.J. 376, 387 (N.J. 1956).

Here, the first element is met because it is undisputed that a valid contract exists, and it is proven by the existence of the Master Contract Agreement which was executed and signed by both parties. (*See* Master Contract Agreement attached as Ex. 1, ECF No. 1-1) The second element, relating to Defendant's performance, is highly disputed. The first provision at issue relates to confidentiality. The confidentiality provision provides:

> Neither party shall disclose to any third party any Confidential Information of the other during the term of the agreement and for a period of one year thereafter. As used herein, Confidential Information means any information which relates to any party's research, business processes, apparatus, development, trade secrets proprietary products or business affairs, or any and all other information considered proprietary in nature, but does not include information which (i) is at the time of its disclosure publicly known; (ii) was already known by the receiving party at the time of disclosure or (iii) is lawfully received from a third party not bound under a confidentiality agreement with TSCTI or SUBCONTRACTOR; (iv) SUBCONTRACTOR and TSCTI acknowledge that in the event of a breach or threatened breach of the provisions of this section 5, remedies at law will be inadequate and that either party shall be entitled to an injunction to enforce this provision, provided however that nothing herein shall be construed to preclude the injured party from pursuing further remedies. All original material including programs, disks, card decks, tapes,

listings, and other programming documentation originated and prepared for TSCTI or TSCTI's clients belong to TSCTI or TSCTI's client. Also all materials deemed to contain confidential information that are in the possession of Subcontractor's employees including copies, notes, extracts, etc., of any kind, are to be returned to TSCTI or TSCTI's clients.

(Master Contract Agreement ¶ 4.)

As Plaintiff points out, Defendant, through its relationship with Plaintiff, had access to confidential and proprietary information because Defendant was involved in meetings discussing specific concerns the government/client faced, was involved in strategy sessions wherein proposed solutions to those problems were discussed, and had access to internal systems Plaintiff possessed—which all related to the project the parties were seeking to obtain.  Contrary to Defendant's assertion, the Court finds Plaintiff's claims does not lack factual support.  Plaintiff's submission specifically highlights the various ways Defendant was exposed to confidential information including: (1) the SAFE methodology process which Plaintiff and AttainX used to introduce delivery, (2) project confluence pages which has proprietary information Plaintiff and AttainX developed for its work for the USDA, (3) the deliverables, requirements, and issues and risks analysis for deliveries to the Farm Loan program, and (4) access to and ability to develop relationships with its government client.  (*See* Certification of Manoj Mathai ¶¶ 6–12 attached as Ex. 1, ECF. 12-1.)  Further, at this stage, Plaintiffs are not required to prove its allegations with extreme specificity.  *Punnett v. Carter*, 621 F.2d 578 (3d Cir. 1980) ("On a motion for a preliminary injunction, plaintiffs are not required to prove their case with airtight certainty.  Few things in this world are certain and we should not erect insurmountable barriers to judicial relief by holding plaintiffs to an impossibly high standard. Nevertheless, as we have already mentioned, the moving party bears a heavy burden on a motion for a preliminary injunction, particularly one seeking mandatory relief.")

13

Further, the Court finds Defendant's assertion, that the information it possesses is publicly available, as unsupported.  The only support Defendant puts forward in support of why the information is publicly available are conclusory statements in its opposition and in an affidavit by Madhan Subramanian, Chief Operating Officer of iLabs. This is insufficient especially when juxtaposed to Plaintiff's evidence.  Additionally, it is reasonable to infer that because Defendant is actively reaching out to Plaintiff's business partner requesting information, at the very least it is seeking confidential information.  Moreover, since Defendant's new partner is CSC—a direct competitor—and is performing similar work for them, confidential information was most likely disclosed during this relationship, which is ongoing.

The Court also agrees with Plaintiff that Defendant violated the non-solicitation provision of the Master Contract. That provision, in relevant part states:

> SUBCONTRACTOR agrees not to solicit, directly or indirectly, TSCTI clients for business, during the term of this agreement and for a minimum of one (1) Years after the termination of this agreement. In addition, SUBCONTRACTOR also agrees not to solicit directly or indirectly any business from companies (which includes the subcontracting company, with whom TSCTI has contracted, who directly placed the consultant at the client site as well as the direct client site companies as well as affiliates, subsidiaries, divisions, parent companies and TSCTI's or subcontractors of these companies) which TSCTI has presented SUBCONTRACTOR candidates during the term of this agreement and for a minimum of one (1) years after the termination of this agreement, irrespective of whether or not they are placed with said client. TSCTI and its client agree not to hire SUBCONTRACTOR employees during the term of this agreement and one year thereafter. The term client refers to the end client to whom the Subcontractor personnel are going to provide services under this agreement and Subcontractor can retain its existing relationship.

(Master Contract Agreement ¶ 5.) The provision expressly prohibits the solicitation of Plaintiff's clients during and for a period of one year after the Master Contract.  Defendant seemingly points out that Plaintiff's solicitation claim is lacking because it is not alleged it solicited from AttainX,

14

Plaintiff's current business partner, nor is it alleged that CSC was a client, capable of bringing Defendant's relationship with them within the purview of the provision.  (Opposition Brief at 13.) This argument fails for two reasons.  First, Plaintiff has shown the Court through screenshots of communications within its reply and an attached affidavit from AttainX's Executive Vice President that Defendant undertook solicitation efforts.  In its submission, Plaintiff points out that between January 30, 2022, through February 11, 2022, Defendant, its agents, and CSC all contacted employees of AttainX seemingly to garner information to further service AttainX and regarding past projects.  (Certification of Manoj Mathai ¶¶ 21–26 attached as Ex. 1)  On its face, Defendant's attempt to contact AttainX—whom Plaintiff currently has a business relationship— seems inappropriate in the least, and in violation of the non-solicitation provision.  Second, Defendant's argument that Plaintiff has not alleged that USDA is a client and that there is "no allegation iLabs has solicited AttainX" is moot in light of the recent text communications from Defendant to AttainX.

Similarly, the Court is persuaded that Defendant violated the exclusivity provision.  The exclusivity provision provides:

> This agreement is an exclusive arrangement between TSCTI and SUBCONTRACTOR and its Consultant. SUBCONTRACTOR and its Consultant agrees not to provide similar kind of services of to any other party, directly or indirectly through any employee, agent or otherwise, and will not permit any of its agents to solicit, initiate or encourage any offers or proposals related to the services it provides to TSCTI.

(Master Contract Agreement ¶ 5.)  Here, the provision restricts Defendant from providing similar services to other parties.  This provision, as Plaintiff points, was violated insofar as Defendant worked with CSC to pursue another contract, which it was ultimately awarded with a six-month extension.  Notably, Defendant does not dispute it worked with CSC in obtaining another contract.

Instead, it challenges the similarity of the work on the basis that the contract it was awarded along with CSC, was for work never awarded to Plaintiff.  This argument wholly misconstrues the restriction within the Master Contract.  The restriction prohibits performing the work regardless of whether Plaintiff was awarded the contract.

Plaintiff is correct in stating that the provisions within the Master Contract are reasonable and enforceable under New Jersey law.  New Jersey courts will enforce restrictive covenants if they are "reasonable in view of all the circumstances of a particular case." *Solari Indus., Inc. v. Malady*, 55 N.J. 571, 576 (1970).  A restrictive covenant will generally be deemed reasonable if it (1) protects a legitimate interest of the plaintiff; (2) imposes no undue hardship on the defendant; and (3) is not injurious to the public. *Id.*; *Whitmyer Bros. v. Doyle*, 58 N.J. 25, 33 (1971). Furthermore, a post-employment covenant will not be enforced beyond the geographical area and time period needed to protect the employer's practice.  *Karlin v. Weinberg*, 77 N.J. 408, 390 A.2d 1161, 1169 (N.J. 1978). "Even if a covenant is found enforceable, it may be limited in its application concerning its geographical area, its period of enforceability, and its scope of activity." *Coskey's Television & Radio Sales & Serv. v. Foti*, 253 N.J. Super. 626, 634 (N.J. App. Div. 1992); *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 223 (D.N.J. 2008)

Here, the Master Contract protects a legitimate business interest which includes preventing the dissemination of Plaintiff's confidential and proprietary information to its competitor and outside parties, ensuring that Defendant does not actively recruit Plaintiff's employees during the period of the Master Contract, and that Defendant does not use the knowledge, skills, and investment it garnered from its relationship with Plaintiff for outside use. Second, the Master Contract does not pose an undue hardship on Defendant insofar as it is only limits Defendant's activities one year after the Master Contract expires.  *See, e.g.*, *The Cmty. Hosp. Grp., Inc. v. More*,

16

183 N.J. 36 (N.J. 2005) (enforcing a two-year covenant covering a thirty-mile radius); *Platinum Mgmt, Inc. v. Dahms*, 285 N.J. Super. 274 (N.J. Super. Ct. Law Div. 1995) (enforcing a restrictive covenant with a one-year term); *Schuhalter v. Salerno*, 279 N.J. Super. 504 (N.J. Super. Ct. App. Div. 1995) ("covenant duration of two years is generally held to be reasonable" (internal quotation and citation omitted)).  Third, the Master Contract is not injurious to the public because it does not indefinitely restrict Defendant's rights.  Therefore, Plaintiff is likely to succeed on the merits on its breach of contract claims.

The Court next turns to Plaintiff's claims for consumer fraud, unlawful interference with prospective economic advantage, and unjust enrichment.

To establish a claim under the New Jersey Consumer Fraud Act, "plaintiffs must prove that: (1) the defendant(s) engaged in deception, fraud, false pretense, false promise, or misrepresentation; (2) the plaintiff(s) suffered an ascertainable loss; and (3) a causal relationship can be established between the unlawful conduct and the loss." *Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 238 (D.N.J. 2008); N.J.S.A. 56:8–2; (citing *Weinberg v. Sprint Corp.*, 173 N.J. 233, 236–37 (2002)).  Plaintiff alleges Defendant is liable for a consumer fraud act violation because it violated the above-mentioned provisions within the Master Contract and it "engaged in the use of unconscionable commercial practices, false promises and/or misrepresentation." (Compl. ¶¶ 66–67.)  Here, on this record, the Court is not convinced Plaintiff has pleaded sufficient facts for its consumer fraud act claims to proceed.  Namely, patently absent from the Complaint are facts as to Defendant's actions that were deceptive, fraudulent, or a misrepresentation.  Plaintiff only makes a conclusory statement that Defendant's engaged in false and deceptive actions and seemingly wants the Court to infer that based on Defendant's breach of contract, it also violated

the consumer fraud act.  The Court has not found any facts in support of this specific claim, and, therefore, Plaintiff is not likely to succeed on the merits of this claim.

"To state a claim for tortious interference with prospective advantage under New Jersey law," a plaintiff must prove: "(1) [his] reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference." *Degennaro v. Am. Bankers Ins. Co.*, 737 F. App'x 631 (3d Cir. 2018).  "A complaint must not only demonstrate that a plaintiff was in pursuit of business but must also allege facts claiming that the interference was done intentionally and with malice." *Id.* (internal quotations omitted).  Here, Defendant had actual knowledge of Plaintiff's relationship with AttainX and the government client and Plaintiff's expectations.  (Compl. ¶ 69.)  Nonetheless, Defendant engaged with CSC as a business partner and directly competed against Plaintiff in obtaining work from the government client.  Further, Plaintiff has shown a loss as a result of the interference.  (*See* Certification of Manoj Mathai ¶¶ 13–16 attached as Ex. 1.)  Thus, the Court is satisfied that Plaintiff's tortious interference claim is likely to succeed.

Last, to prove unjust enrichment "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Dawson v. Gen. Motors LLC*, Civ. No. 19-8680, 2019 WL 3283046, at *7 (D.N.J. July 22, 2019) (citing *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519, 526 (N.J. 1994)) (internal citations omitted).  Here, Plaintiff's claim for unjust

enrichment is likely to succeed because, based upon the Court's finding, Plaintiff can prove as a result of Defendant's relationship with them and access to information Defendant had, it was able to benefit both in its relationship with CSC and in obtaining the government client.  Therefore, Plaintiff's claim for unjust enrichment will likely succeed on its merits.

B. **Irreparable Harm to the Moving Party**

The Court is also persuaded that Plaintiff will suffer irreparable harm or injury if a preliminary injunction is not granted.  Here, the Court finds that Plaintiff suffered irreparable harm because it has already lost a government contract bid to CSC, its competitor, who worked with Defendant in securing its bid.  Further, Plaintiff's trepidation that it will again lose the upcoming SPRUCE solicitation to Defendant and its competitor is valid.  The Court is therefore willing to infer injury caused by Plaintiff.  More pressing, is the potential harm Defendant's continued breach presents which includes the possibility of Plaintiff losing further contract bids, losing relationships it had with prior government clients, and loss of competitive advantage in the business world.  *See Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir.1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.")

On the contrary, the Court is not persuaded by Defendant's assertion that any irreparable harm is a result of Plaintiff's delay.  The Court is well aware that a plaintiff's  "delay in seeking preliminary injunctive relief" shows "evidence that speedy relief is not needed." *EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*, No. 05-5259, 2006 WL 892718, at *12 (D.N.J. Apr. 4, 2006);  *Lanin v. Borough of Tenafly*, No. 12-3399, 2013 WL 936363, at *3 (3d Cir. Mar. 12, 2013) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights . . . [and] [d]elay[s] in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action.") (quoting

*Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985)) (internal citations omitted). Nonetheless, here, though there was a delay in seeking injunctive relief, it seems this may have been because Plaintiff and AttainX wanted to avoid alienating its government's client's interest. Further, given that AttainX and Defendant had a business relationship which was recently terminated in January 2022, this may have partially been a reason for Plaintiff's delay. Of significance to the Court is that Plaintiff filed its motion for temporary restraining order only six days after its Complaint was filed in state court, suggesting to the Court the urgency of Plaintiff's request for relief.

The Court is also unpersuaded by Defendant's assertion that because Plaintiff can be compensated with money damages, it did not suffer irreparable harm. (Opposition Brief at 17.) The Master Contract expressly provides that in the event of a breach, the parties must seek an injunction as relief. The following is illustrative:

> SUBCONTRACTOR and TSCTI acknowledge that in the event of a breach or threatened breach of the provisions of this section 5, remedies at law will be inadequate and that either party shall be entitled to an injunction to enforce this provision, provided however that nothing herein shall be construed to preclude the injured party from pursuing further remedies.

(Master Contract Agreement ¶ 4). Based on its prior discussion, the Court finds Plaintiff will suffer irreparable harm.

### C. <u>Harm to the Non-moving Party</u>

The Court finds here that Defendant's harm was self-inflicted and cannot foreclose injunctive relief. Defendant contends that its employees and teaming partner could be harmed if the Court were to grant injunctive relief. Specifically, Defendant contends that precluding its current contract performance will cause its employees to lose their jobs in supporting CSC and the USDA and it will further harm the work it is doing for the USDA. The Court finds that any harm

Defendant faces is of its own doing.  Defendant certainly could have teamed up with CSC after the expiration of the restrictions within the Master Contract.  However, Defendant formed a relationship with CSC before the expiration of the Master Contract, solicited Plaintiff's clients and employees (which it admits to in its opposition), and utilized or attempted to utilize Plaintiff's confidential information in securing future contract bids with the USDA.  Most importantly if the Court were to grant injunctive relief, in doing so, it would be doing no more than to establish how things should have been—which is to enforce the Master Contract according to its terms.

D.  **Public Interest**

The Court concludes that Plaintiff has shown the public interest is served by granting injunctive relief.  Courts have repeatedly upheld restrictive covenants and in doing so, have emphasized there is great public interest in upholding these contracts.  "A preliminary injunction will serve to enforce valid constraints and will protect the confidentiality of Plaintiff's proprietary information and trade secrets, without stifling the court reporting services industry." *Esquire Deposition Servs., LLC v. Boutot*, Civ. No. 09-1526, 2009 WL 1812411, at *9 (D.N.J. June 22, 2009); *Campbell Soup Co. v. Desatnick*, 58 F. Supp. 2d 477, 489 (D.N.J. 1999) (citing *Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609, 542 A.2d 879 (1988)) (upholding a restrictive covenant, where the driving purpose behind the restrictive covenant was to protect proprietary information, and not to stifle competition.).  Therefore, this Court finds that there is a strong public interest in favor of granting injunctive relief.

V.    **CONCLUSION**

For the reasons stated above, the Court will grant the Motion.  An appropriate Order will follow.

Date: **March 18, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**